[Cite as *McWreath v. Maiorca*, 2015-Ohio-4319.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| LARRY MCWREATH, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2014-T-0075** |
| ROCCO J. MAIORCA, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2012 CV 1929.

Judgment: Affirmed.

*L. Bryan Carr*, Carr, Feneli & Carbone Co., L.P.A., 1392 S.O.M. Center Road, Mayfield Heights, OH 44124 (For Plaintiff-Appellant).

*Daniel P. Daniluk* and *Cherry Lynne Poteet*, 1129 Niles-Cortland Road, S.E., Warren, OH 44484(For Defendants-Appellees).

THOMAS R. WRIGHT, J.

{¶1} This accelerated-calendar appeal is from a final judgment in a civil action before the Trumbull County Court of Common Pleas. As part of that judgment, the trial court found that appellees, Rocco J. Maiorca and Annarock Petroleum, LLC, had been properly assigned the rights of the lessee under an oil and gas lease in regard to ninety acres of land in Vienna Township, Ohio. Appellant, Larry J. McWreath, argues that the trial court erred in not holding that the assignment of the lease was fraudulent and

noncompliant with governing statutory law. For the following reasons, the decision upholding the assignment is affirmed.

{¶2} As of April 6, 1981, the ninety acres were owned by Frank Kopervac and his sister, Elizabeth. On that date, the Kopervacs executed an oil and gas lease in favor of Eastern Petroleum Services as to the entire tract. The lease's first paragraph stated, in pertinent part:

{¶3} "1. That the Lessor, for and in consideration of One Dollar ($1.00) and other valuable consideration in hand paid by the Lessee, the receipt of which is hereby acknowledged and the covenants and agreements hereinafter contained, does hereby Lease and let exclusively unto the Lessee for the purposes of drilling, operating for, producing and removing oil and gas and all the constituents thereof, and in transport, across and through said lands, oil, gas and their constituents from the subject and other lands and of injecting, storing and holding in storage and removing gas of any kind, * * * including gas lying thereunder, by pumping through wells and other means, into, in and from and sands, strata or formations lying thereunder, regardless of the sources of such gas or the location of the wells or other means of doing so, and of placing tanks, equipment and structures thereon to procure and operate for the said products and of laying pipe lines thereon to transport the same and for gas storage purposes on other lands, all that certain tract of land * * * being all the property owned by Lessor in Section/Lot 44 in Vienna Township, containing 90 acres, more or less."

{¶4} The term of the lease was for three years. However, if a producing well was operating on the land prior to the conclusion of the initial three years, the lease would remain in effect as long as oil or gas was produced "in paying quantities." The lease also provides that all terms of the agreement are binding upon the parties' heirs

2

and successors. Additionally, as to the assignment of the lease, the fifteenth paragraph granted the "Lessee" the ability to transfer its rights under the lease without providing any notice to the "Lessor."

{¶5} During the first year of the lease, Eastern Petroleum Services drilled two wells which have continued to produce oil or gas during the entire time frame pertinent to this litigation. Therefore, once Frank Kopervac became the sole lessor following his sister's death, he continued to receive monthly royalty payments from the operators of the wells until his own death in 2008.

{¶6} After establishing the two wells in early 1982, Eastern Petroleum Services assigned its entire interest in the Kopervac lease to Ohio Oil & Gas. Within twenty days of becoming the lessee, Ohio Oil & Gas assigned a partial interest in the subject lease to Exploration Management. Inc. The partial interest covered forty acres of the land and one of the wells. Approximately twenty months later, in July 1984, Ohio Oil & Gas sold its remaining interest under the lease, covering the last fifty acres and the second well, to Exploration Management.

{¶7} Exploration Management was incorporated under Ohio law in 1979, and has remained in good standing throughout the entire period relevant to this litigation. Its articles of incorporation state that its principal office is on Niles-Cortland Road in Cortland, Ohio. After obtaining the remaining interest in the Kopervac lease in 1984, Exploration Management was the sole lessee under the lease until March 2012.

{¶8} At approximately the same time as Exploration Management became the sole lessee, a second entity, Exploration Energy, Inc., was incorporated under Ohio law. Like Exploration Management, Exploration Energy's articles of incorporation listed 2202 Niles-Cortland Road in Cortland as the location of its principal office.

3

{¶9}  At some point after its incorporation, Exploration Energy became the sole owner of the two wells on the Kopervac property.  However, Exploration Energy did not acquire an interest in the Kopervac oil and gas lease.  As the owner of the wells, the company was responsible for the production of the oil and gas, and the maintenance of all equipment on the property.

{¶10}  In March 2001, Exploration Energy sold its ownership of the two Kopervac wells, as well as its ownership of numerous other oil and gas wells in northeastern Ohio, to Annarock Petroleum.  As part of this transaction, Exploration Energy and Annarock Petroleum had to submit a "change of ownership" notice with the Ohio Department of Natural Resources.  Immediately after the sale of the wells, Exploration Energy ceased operations on an on-going business.

{¶11}  Rocco J. Maiorca is a part-owner and the managing member of Annarock Petroleum.  Over the next eleven years, Annarock Petroleum continued to operate and maintain the two Kopervac wells.  The company also continued to send monthly royalty payments to Kopervac.

{¶12}  Kopervac died in March 2008.  His will named Larry McWreath as his sole heir.  As a result, McWreath became the sole lessor under the oil and gas lease.  Over the next three years, there were no problems regarding the operations of the wells, and McWreath continued to receive the monthly royalty payments.  However, in early 2012, McWreath began to claim that either Exploration Management or Annarock Petroleum had violated various terms of the oil and gas lease.  McWreath further claimed that the lease did not give Exploration Management all of the oil and gas rights in the property; according to him, the lease did not cover deep well drilling rights.

{¶13}  Each well on the ninety acres had its own access road which had a gate

4

across it.  In the past, the two gates never had locks, which made it easy for Annarock Petroleum to access the wells.  When McWreath began to question whether the terms of the lease had been violated, he placed a lock on each of the two gates.  Furthermore, when Annarock Petroleum requested the combinations for the locks, McWreath refused to cooperate.  Believing that Annarock Petroleum still retained the right to access the well, an employee of the company drove around the gates onto the land.  In response, McWreath called the local police, and the employee was initially charged with criminal trespassing.  But the local prosecutor later chose to dismiss the charge, and refused to reinstate the charge despite the fact that McWreath specifically asked him to do so.

{¶14}  Soon after McWreath began to challenge the validity of the Kopervac oil and gas lease, Exploration Management executed a document in which it assigned its entire interest in the lease to Annarock Petroleum.  In addition to being signed by John A. Ross as president of Exploration Management, the assignment was also executed by Rocco J. Maiorca as vice president of Exploration Management.  Upon its execution, the document was filed with the Trumbull County Recorder on March 20, 2012.

{¶15}  On that same day, Maiorca filed a written notice with the county recorder stating that Annarock Petroleum, as lessee, had not forfeited or abandoned its interest in the Kopervac oil and gas lease.  The notice listed a number of "facts" regarding the Kopervac/McWreath property, including the consistent payment of royalties through the years based upon continuing production from the wells.

{¶16}  Five months after the filing of the lease assignment, McWreath instituted the underlying proceeding against Maiorca and Annarock Petroleum.  In his amended complaint, McWreath asserted two claims for declaratory judgment and one claim for civil trespass.  Under the first declaratory judgment, he requested that the terms of the

oil and gas lease be construed to determine whether he, as the lessor under the lease, still retains the deep well drilling rights to the Kopervac property. Under the second, he sought a declaration that the March 2012 "lease" assignment to Annarock Petroleum was invalid, thereby rendering the entire oil and gas lease void.

{¶17} In answering the amended complaint, Maiorca and Annarock Petroleum asserted five counterclaims. Ultimately, they only went forward on three counterclaims, essentially seeking a declaratory judgment regarding the continuing enforceability of the lease and an injunction to prohibit McWreath from denying Annarock Petroleum access to the two wells. McWreath later decided to dismiss his trespass claim, choosing to go forward only on his two declaratory judgment claims.

{¶18} The case proceeded upon the parties' stipulations of fact and final briefs on the merits. The stipulations primarily consisted of copies of various documents, the authenticity of which were agreed to by the parties. Included in these documents were copies of the Kopervac oil and gas lease and the March 2012 assignment to Annarock Petroleum. The parties also submitted McWreath's and Maiorca's deposition for review in relation to various factual matters.

{¶19} In its final judgment, the trial court ruled in favor of Maiorca and Annarock Petroleum on all five remaining claims. In disposing of the three declaratory judgment claims, the court reached the following conclusions: (1) the Kopervac oil and gas lease is still in full force and effect; (2) the March 2012 "lease" assignment involving Exploration Management and Annarock Petroleum is valid; (3) as a result, Annarock Petroleum is the present lessee under the Kopervac lease; and (4) the oil and gas rights granted in the Kopervac lease include all deep well drilling rights. As to Maiorca's and Annarock Petroleum's claims for breach of lease and injunctive relief, the trial court

6

found that McWreath repeatedly tried to interfere with Annarock Petroleum's rights under the lease by denying it access to the property. Hence, the court granted a permanent injunction prohibiting McWreath from violating any of Annarock Petroleum's rights under the oil and gas lease.

{¶20} In contesting the merits of the foregoing judgment, appellant raises three assignments of error for review:

{¶21} "[1.] The trial court erred in finding the oil and gas lease at issue to be in full force and effect.

{¶22} "[2.] The trial court erred in finding that 'deep well drilling rights' are comprehended in the lease.

{¶23} "[3.] The trial court erred in issuing a restraining order against appellant."

{¶24} Under his first assignment, McWreath asserts three arguments regarding whether the Kopervac oil and gas lease is still enforceable. First, he contends that the lease must be declared void because the March 2012 "lease" assignment to Annarock Petroleum was wrought with fraud. According to McWreath, Maiorca engaged in such fraudulent behavior that it renders the March 2012 assignment invalid and compromises continuing validity of the oil and gas lease.

{¶25} To prove fraud, a party must satisfy six elements: "'"(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.'"" *Williams v. Aetna Finance Co.*, 83 Ohio St.3d 464, 475

7

(1998), quoting *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169 (1984).

{¶26} In maintaining that the March 2012 assignment was fraudulent, McWreath raises six issues. First, he states that the document provides an address for Exploration Management, 2202 Niles-Cortland Road in Cortland, Ohio, that is incorrect. In support of his assertion, McWreath notes that, during his deposition, Maiorca admitted that the building at the cited address houses an accounting firm, and that no one representing Exploration Management is at that address on a regular basis.

{¶27} Taken as a whole, Maiorca's testimony only demonstrates that Exploration Management did not have an established office from which it transacted its business. Maiorca testified that all of the accounting work for the company was done at that address, and that the royalty payments were made there. He further testified that if a person needed to contact the company, the "Niles-Cortland Road" address was the best one to utilize. Thus, the record does not show that a different address for the company existed, or that the "address" statement on the assignment was knowingly false. Moreover, even if the statement was incorrect, there is nothing in the record to indicate that the lack of a proper address was material to the assignment.

{¶28} Under his second "fraud" issue, McWreath notes that Maiorca also stated during his deposition that Exploration Management "is not registered with the State of Ohio." Based upon this, he asserts that the March 2012 assignment is invalid because Exploration Management has been defunct as a corporation since 2001. However, the record readily shows that it was Exploration Energy, not Exploration Management, that ceased doing business in 2001. Thus, in stating that Exploration Management was not registered with the state, Maiorca was not referring to whether the company still had its corporate status, but whether it was still registered with the Ohio Department of Natural

8

Resources as an owner and operator of oil and gas *wells*. To this extent, there was no fraud.

{¶29} Under his third "fraud" issue, McWreath maintains that it was fraudulent for Maiorca to sign the March 2012 assignment when he subsequently admitted that he did not hold any office with Exploration Management at that time. As part of his deposition, Maiorca testified that he should not have executed the assignment on behalf of Exploration Management because he had not been associated with that company since 1984. But he was also able to provide a logical explanation as to why the mistake had occurred. Specifically, Maiorca noted that, on the day he signed the "lease" assignment, he and John A. Ross, president of Exploration Management, were "quickly" executing a number of documents pertaining to their various businesses. He further noted that, although he had never been vice president for Exploration Management, he had once held that post with Exploration Energy.

{¶30} If Maiorca's signature appeared on the assignment due to confusion as to which company he served as vice president, there would be no specific intent to commit fraud. Moreover, since the assignment also has the valid signature of John A. Ross as president of Exploration Management, the presence of Maiorca's signature was superfluous and had no effect upon the validity of the assignment.

{¶31} Under his fourth "fraud" issue, McWreath maintains that a finding of fraud is justified because Maiorca and Annarock Petroleum gave conflicting statements during discovery as to when the assignment of the lease took place. According to McWreath, Maiorca and Annarock Petroleum once asserted during the case that the assignment occurred in 2001, and cited the "change of ownership" form which they submitted to the Ohio Department of Natural Resources.

{¶32} As to the "change of ownership" form, the record establishes that the form pertained to the sale of the two Kopervac *wells* from Exploration Energy to Annarock Petroleum, not the "lease" assignment. To that extent, the discovery responses were not conflicting. Furthermore, even if Maiorca and Annarock Petroleum made conflicting statements during discovery as to the timing of the assignment, such a conflict during the case itself would not be relevant to demonstrating fraud as of March 2012.

{¶33} Under his last "fraud" issue, McWreath argues that fraud was committed when Maiorca and Annarock Petroleum stated on the "change of ownership" form that the prior holder of the oil and gas lease had been Exploration Energy, not Exploration Management. But McWreath has again mischaracterized the form. The record clearly shows that the form covered the sale of the wells to Annarock Petroleum. The record also establishes that Exploration Energy owned the Kopervac wells prior to the sale to Annarock Petroleum. Thus, the record does not support McWreath's assertion of fraud.

{¶34} As a separate point under his fraud argument, McWreath submits that the March 2012 "lease" assignment should be declared void on the basis of a public policy violation. In support, he cites *Conny Farms, LTD. v. Ball Resources, Inc.*, 7th Dist. Columbiana No. 09 CO 36, 2011-Ohio-5472. However, the *Conny Farms* case involved the enforceability of a judicial ascertainment clause in an oil and gas lease. In this case, McWreath is contesting the validity of a "lease" assignment, not the lease itself. More importantly, the assignment does not have a judicial ascertainment clause or any other clause that would conflict with the general public policy of this state.

{¶35} The wording of the March 2012 "lease" assignment is sufficiently clear to establish the purpose of the document. Pursuant to the foregoing analysis, McWreath has not shown that the document has any material misstatement which would adversely

10

affect the right of the parties to the assignment. Moreover, even if the document does contain one misstatement, i.e., whether Maiorca was Exploration Management's vice president, the evidence supports a finding of no intent to mislead. Accordingly, McWreath cannot satisfy the elements for fraud.

{¶36} Additionally, McWreath stipulated that he was "* * * not alleging a claim/count of fraud against [Maiorca and Annarock Petroleum] * * *, or that "* * * [they] made a false representation to him or concealed a material fact from him." To this extent, his "fraud" arguments go to the rights of the assignor and assignee which would not result in a ruling that the lease is void. Given the stipulations, it is hard to imagine arguing that the trial court erred in finding no fraud or that he suffered prejudice. Therefore, McWreath's first argument regarding the validity of the "lease" assignment lacks merit.

{¶37} Under his second argument concerning the March 2012 assignment, McWreath contends that the assignment never became effective because Maiorca and Annarock Petroleum did not comply with the requirements of R.C. 1509.31. The first sentence of this statute provides:

{¶38} "Whenever the entire interest of an oil and gas lease is assigned or otherwise transferred, the assignor or transferor shall notify the holders of the royalty interests, and, if a well or wells exist on the lease, the division of mineral resources management, of the name and address of the assignee or transferee by certified mail, return receipt requested, not later than thirty days after the date of the assignment or transfer."

{¶39} No evidence was submitted as part of the stipulations of fact showing that notification was provided after the "lease" assignment was recorded in March 2012.

11

Based upon this, McWreath asserts that since he never received notification of the assignment in compliance with the statute, the assignment must be void.

**{¶40}** As to this point, this court would note that McWreath has raised this point as a means of declaring that the Kopervac oil and gas lease is likewise void. However, paragraph 15 of the lease recognizes the right of the lessee to assign its right to another person or entity. The paragraph further provides that when an assignment of rights takes place, the lessor is not entitled to any notice. Thus, although McWreath may have been entitled to notice as a holder of royalty rights, he was not entitled to notice as the lessor under the oil and gas lease. To that extent, lack of compliance with R.C. 1509.31 had no effect upon the continuing validity of the oil and gas lease.

**{¶41}** Under the statute, notification of the assignment must be provided by the assignor. In this case, Exploration Management is the assignor. Therefore, the failure to comply with the notification requirement means that the assignment is not official, and Exploration Management is still the holder of the rights under the lease. However, there is no language in the statute indicating that, by failing to satisfy the statute, Exploration Management would lose the ability to assign its rights under the lease. In turn, once a new assignment to Annarock Petroleum has been executed and recorded, Exploration Management could complete the transaction by providing the necessary notification.

**{¶42}** Since McWreath has not established that any error as to the March 2012 assignment has rendered the oil and gas lease void, his second argument under his first assignment is not well taken.

**{¶43}** Under the final argument of his first assignment, McWreath maintains that the Kopervac oil and gas lease is no longer enforceable because the lease has been abandoned. In making this argument, though, McWreath relies solely upon the fact that

12

Exploration Management was unsuccessful in assigning its rights under the oil and gas lease to Annarock.

{¶44} Notwithstanding the fact that the assignment to Annarock has not been completed under R.C. 1509.31, there is no evidence that the production of oil and gas has ceased during the time period since March 2012. Similarly, there is no evidence that McWreath has not stopped receiving the monthly royalty payments. Hence, while there is a clear dispute as to which entity is the lessee under the lease at this time, the rights under the lease are still being exercised. To this extent, the lease has not been abandoned.

{¶45} As McWreath has not demonstrated a flaw in the March 2012 assignment that would affect the continuing validity of the oil and gas lease, his first assignment is not well taken.

{¶46} McWreath's second assignment pertains to the trial court's interpretation of the Kopervac oil and gas lease. Under his second declaratory judgment claim, he sought a determination that the lessee's right to extract oil and gas did not include deep well drilling. In entering judgment in favor of Maiorca and Annarock Petroleum on this claim, the trial court held that the wording of the lease was broad enough to encompass all oil and gas rights. In challenging this holding, McWreath contends that the original parties to the lease could not have intended to include deep well drilling rights in the grant because deep well drilling did not even exist in 1981.

{¶47} Since an oil and gas lease is a type of contract, any determination of the rights of the lessor and lessee must be based upon the terms of the written instrument. *Kramer v. PAC Drilling Oil & Gas, LLC*, 197 Ohio App.3d 554, 2011-Ohio-6750, ¶10 (9th Dist.). As a general proposition, the construction of a written contract is a matter of law

13

that will be reviewed de novo on appeal. *Bath Twp. v. Raymond C. Firestone, Co.*, 140 Ohio App.3d 252, 256 (9th Dist.2000). "'The purpose of contract construction is to discover and effectuate the intent of the parties. The intent of the parties is presumed to reside in the language they chose to use in their agreement.'" *Id.*, quoting *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313-314 (1996).

**{¶48}** The grant of the right to the oil and gas on the Kopervac land appears in the first paragraph of the lease. As noted above, the clause gives the lessee the right to produce and remove oil and gas "by pumping through wells or other means, into, in and from *any sands, strata or formations* lying thereunder, regardless of the source of such gas or the location of the wells or other means of doing so, * * *." (Emphasis added.)

**{¶49}** The foregoing language is plain and unambiguous. By referring to *all* sands, strata, or formations, the language does not place any limitation as to where the oil and gas is located, so long as it is under the surface of the ground. Furthermore, as the trial court noted, the language clearly provides that any means can be employed to extract the materials from the ground. Therefore, the language does not indicate any reservation of rights to the lessor regarding the oil and gas. The lessee is entitled to all oil and gas, regardless of its location underground.

**{¶50}** Given the absolute nature of the grant, the creation of new technology to engage in deep well drilling would inure to the benefit of the lessee. The fact that the original parties to the lease were unaware of the possibility of deep well drilling does not alter the interpretation of the paragraph. By granting the lessee the right to extract the oil and gas regardless of its location, the lessor lost the ability to extract any oil and gas by any means. To this extent, the trial court did not err in holding that the terms of the lease did not allow McWreath to engage in any separate drilling on the land. Thus, his

14

second assignment is without merit.

{¶51} Under his final assignment, McWreath argues that the trial court should not have granted a permanent injunction against him because there was no evidence demonstrating that he was inhibiting Annarock Petroleum's access to the wells. Yet, in making this argument, McWreath does not acknowledge the undisputed fact that he placed locks on the two access gates, and then refused to give the combinations to the locks to Annarock Petroleum's employee. He also does not acknowledge that he called the police and had a company employee cited for civil trespassing when that employee drove around the locked gates to access the wells.

{¶52} Viewed as a whole, the record contains sufficient evidence for the trial court to find that McWreath was attempting to block Annarock Petroleum's right under the lease to enter upon the land to properly maintain the wells and continue production of the oil and gas. In turn, this finding justifies the issuance of a permanent injunction to stop McWreath from taking any other steps to inhibit Annarock Petroleum's access to the property. Accordingly, McWreath's third assignment also lacks merits.

{¶53} The judgment of the Trumbull County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON. P.J.,

COLLEEN MARY O'TOOLE, J.,

concur.

15