# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
NOBLE COUNTY

SAMUEL C. TEWANGER, ET AL.,

Plaintiffs-Appellees,

v.

STONEBRIDGE OPERATING COMPANY, LLC. ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 NO 0456**

---

Civil Appeal from the
Court of Common Pleas of Noble County, Ohio
Case No. CV 213-0161

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Richard Yoss* and *Atty. Jason Yoss,* Yoss Law Office, 122 North Main Street, Woodsfield, Ohio 43793, for Plaintiffs-Appellees and

*Atty. Daniel Corcoran,* and *Atty. Patrick Stealey,* Theisen Brock, 424 Second Street, Marietta, Ohio 45750, for Defendant-Appellant Positron Energy Resources. *Atty. John Triplett, Jr.* and *Atty. Patrick Stealey*, Theisen Brock, 424 Second Street, Marietta, Ohio 45750, for Defendant-Appellant Stonebridge Operating Company, LLC.

Dated: January 24, 2020

_____

**D'APOLITO, J.**

{¶1}   Defendants-Appellants, Stonebridge Operating Co., LLC ("Stonebridge") and Positron Energy Resources, Inc. ("Positron") appeal the judgment entry of the Noble County Court of Common Pleas entering summary judgment in favor of Plaintiffs-Appellees, Samuel and Deborah Tewanger on their claims for breach of contract and termination of an oil and gas lease based on lack of production in paying quantities.

{¶2}   In their sole assignment of error, Appellants argue that: (1) Appellees' claims are time-barred based on the applicable statute of limitations, or otherwise barred by the equitable doctrines of waiver, estoppel and laches; (2) the trial court did not have subject matter jurisdiction based on Appellees' failure to join indispensable parties; and (3) the record contains sufficient evidence of economic production.  Appellees appear to have abandoned their breach of contract claim predicated upon the lessee's failure to put the wells in production within 60 days of the execution of the lease.  In their appellate brief, Appellees argue exclusively that the trial court did not err in entering summary judgment on the failure to produce in paying quantities claim.

{¶3}   We find that all necessary parties have been joined in this action, and that Appellees asserted their claim for lack of production in paying quantities within the twenty-one year statute of limitations applicable in this case.  Because Appellants concede that no oil and gas was produced for a period of greater than two years during the life of the lease, the judgment of the trial court on the lack of production in paying quantities claim is affirmed.

## STANDARD OF REVIEW

{¶4}   An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C).  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  Before summary judgment can be granted, the trial court must determine that:  (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable

Case No. 17 NO 0456

minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

**{¶5}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor.

**{¶6}** This case involves the interpretation of a written contract. When reviewing a contract, the court's primary role is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.,* 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999). A contract that is, by its terms, clear and unambiguous requires no interpretation or construction and will be given the effect called for by the plain language of the contract. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). Review of an unambiguous written agreement is a matter of law for the court, which an appellate court reviews de novo. *Cadle v. D'Amico*, 7th Dist. Mahoning No. 15 MA 0136, 2016-Ohio-4747, 66 N.E.3d 1184, ¶ 22.

## FACTS AND PROCEDURAL HISTORY

**{¶7}** Appellees are the fee owners of certain real property consisting of 38 acres, more or less, situated in Section 18 of Elk Township, Noble County, Ohio. Samuel acquired his interest in the property by general warranty deed dated July 7, 1975, filed October 3, 1975, and recorded in Volume 142, Page 272 of the Official Records of Noble County, Ohio. He conveyed his interest in the property to himself and his wife, Deborah

Case No. 17 NO 0456

by general warranty deed dated July 11, 1984, filed July 18, 1984 and recorded in Volume 158, Page 364 of the Official Records of Noble County, Ohio.

{¶8} Appellees entered into an oil and gas lease with Drillers Petroleum Corporation dated October 29, 1979, filed December 4, 1979 and recorded in Volume 84, Page 990 of the Lease Records of Noble County, Ohio ("1979 Lease"). (*Id.* ¶ 5). Two wells were drilled, Sam Tewanger No. 1 ("Sam 1") and Sam Tewanger No. 2 ("Sam 2"). (*Id.* ¶ 6). At some point after the wells were drilled, they were taken out of production and the 1979 Lease was forfeited on February 13, 1987.

{¶9} Appellees entered into a second oil and gas lease with Washington Land Company, dated March 17, 1987 and recorded on March 20, 1987 in Volume 104, Page 782 of the Lease Records of Noble County, Ohio ("1987 Lease"). Although the lessee was not required to drill additional wells under the terms of the 1987 Lease, a handwritten provision was added to the delay rental clause, which reads, in pertinent part:

> The said Lessee covenants and agrees to pay a rental at the rate of <u>five dollars per acre ($5.00 per acre)</u> Dollars annually in advance, beginning _____ until, but not after, a well yielding royalty [sic] to the Lessors is drilled on the leased premises * * * *60 days to have wells in Production (initials omitted)

(1987 Lease, ¶ 8) (Omission in original; handwritten clause in italics). Appellants concede that no oil or gas was produced within the 60-day period.

{¶10} The 1987 Lease contains a habendum clause, which reads, in its entirety:

> [T]his lease shall remain in force for a term of \_\_\_\_\_ years from this date and as long thereafter as oil and gas is drilled or produced by any method from the said premises by the lessee, its successors and assigns.

Lease at p.1. (Omission in original).

{¶11} The record reflects that neither Appellants nor their predecessors in interest produced any oil or gas from the wells in 1987, and 1989 through 1992. In this appeal,

Appellants concede a gap in production from 1987 to 1992. (Rep. Brf., 2.) ("It is undisputed in the record that there was not production on this well from 1987-1992.")

**{¶12}** According to the Ohio Department of Natural Resources, Stonebridge is listed as the owner of the wells from 2001 to the time this action was filed in 2013. Halwell Company was listed as the owner of the wells in the Ohio Well Completion Reports prior to 2001.

**{¶13}** Appellees filed their complaint on September 16, 2013 seeking a declaration that the 1987 Lease was breached and/or expired by its own terms based on the lessees' failure to fulfill the handwritten provision in the lease, and the failure to produce oil and gas in paying quantities. Appellees requested that title be quieted and any lien or encumbrance by virtue of the 1987 Lease be discharged. Appellees also asserted additional breach of contract and tort claims that were voluntarily dismissed prior to this appeal.

**{¶14}** On August 25, 2014, Appellees filed a motion to add additional parties, that is, twenty-eight individuals/entities listed by Appellants as working interest owners in the 1987 Lease. The motion was never addressed by the trial court. Service on approximately 70% of the individuals/entities on the list failed. Individuals that did respond indicated that they had divested themselves of any interest in Halwell.

**{¶15}** At his deposition on May 5, 2015, Eddy Biehl, the record owner and statutory agent of Appellants, and the president and operations manager of the now-defunct Halwell, testified that Halwell became the owner of the entire working interest in the land through a series of assignments from and to companies controlled by the Biehls (Washington Land Company to Bentre Company to Halwell). Biehl further testified that Appellants were formed in the late 1990s as successors in terms of operations or interests to Halwell Corporation, which assigned all of its rights to the 1987 Lease to Positron and the operation of the wells to Stonebridge. Specifically, Biehl testified "Stonebridge took over the day-to-day operation of the wells. Positron owned – or got assigned all of the assets." (Biehl Depo. p. 22).

**{¶16}** At some point, Biehl as an individual was assigned a "four point something" working interest in the 1987 Lease. (*Id.* 12). He testified that his individual interest was assigned to Positron. In addition, a list of twenty-eight working interest owners in the 1987

Lease was provided by Biehl to Appellees in discovery. Biehl explained that "at the time Halwell kind of wrapped up its affairs or changed, it was [his] understanding that all of these individual working interest owners contributed their working interest in a series of wells that Halwell operated to a new LLC that [he] had nothing to do with. That – and consolidated their interest someplace in '98 or '99." (*Id.* 9). He further testified that none of the individuals currently owned a working interest in the lease and that the name of the new LLC was HCI Programs, LLC ("HCI").

**{¶17}** According to Biehl, he was instructed to consolidate all of the individual interests in terms of distributions and accounting to HCI. Biehl testified that "Positron was the consolidating entity and there was kind of a master agreement and bill of sale prepared at that time * * *." (*Id.* 13). He further testified that he believed the various interests were recorded, but not in every county. Later in his testimony, and contrary to his earlier statements, Biehl testified that he did not know if two working interest owners from the list, Twin Bridge Energy 86-II and Marietta Recompletions, contributed their interest to HCI Programs. (*Id.* 23-25).

**{¶18}** At his deposition, Biehl agreed to provide additional information regarding HCI. According to the affidavit of Richard A. Yoss, counsel for Appellees, a subpoena was issued to Appellants on January 15, 2016 that requested all records relating to the alleged working interest holders. Appellants did not respond to the subpoena. Yoss conducted a public records search in Noble County, which established that Appellants are the record owners of the complete working interest in the 1987 Lease.

**{¶19}** On March 30, 2016, Appellees filed their motion for summary judgment. Appellees attached Ohio Well Completion Reports, their own affidavit, and the Supplemental Response to Plaintiffs' First Combined Discovery Requests and Requests for Admissions to Defendants in support of their argument that the lease terminated on its own terms and as a matter of law as early as 1987, or, in the alternative, in 1992.

**{¶20}** On April 4, 2016, a notice of hearing was filed by the trial court setting a non-oral hearing on the motion for summary judgment on May 23, 2016. In response to the motion, Appellants filed the affidavit of John Schneider on May 20, 2016 and their memorandum in opposition on May 23, 2016.

{¶21} In his affidavit, Schneider avers that he is in charge of the production department for Stonebridge and that both wells "produced and have produced in paying quantities while operated by [Stonebridge]" (Schneider Aff. ¶ 5, 10). However, Schneider does not indicate in his affidavit the date when Stonebridge began operating the wells.

{¶22} In their opposition brief, Appellants argued that Appellees' claims were barred by the applicable statute of limitations and the equitable doctrine of estoppel, that forfeiture was inappropriate, and that genuine issues of material fact existed with respect to production and when it commenced.

{¶23} Appellees filed a motion to strike both the Schneider affidavit and the opposition brief on May 27, 2016, arguing that the pleadings were not timely filed. In the motion to strike, Appellees requested, in the alternative, that they be granted thirty days to submit a reply to the opposition brief if it was not stricken.

{¶24} On January 13, 2017, the trial court issued a journal entry, which quoted Civil Rule 56(C) as follows:

> The motion shall be served in accordance with Civ.R. 5. Unless otherwise provided by local rule or by order of the court, the adverse party may serve responsive arguments and opposing affidavits within twenty-eight days after service of the motion, and the movant may serve reply arguments within fourteen days after service of the adverse party's response. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the

issue of liability alone although there is a genuine issue as to the amount of damages.

(1/13/17 J.E. p. 1-2)(Emphasis in original).

**{¶25}** The trial court concluded that "[a] reading of Civil Rule 56(C), and considering the applicable dates in this case, clearly indicates that the only 'evidence or stipulation' that 'may be considered' by this Court as 'timely filed' is the motion of Plaintiffs and the memorandum and appendix attached thereto." (*Id.* 2). The trial court further concluded that summary judgment was appropriate and ordered Appellees to prepare an order in accord.

**{¶26}** The trial court predicated summary judgment on the breach of contract claim on our decision in *Price v. K.A. Brown Oil & Gas, LLC*, 7th Dist. Monroe No. 13 MO 13, 2014-Ohio-2298. In that case, the 1988 oil and gas lease specifically read that "[t]he purpose of this lease is so that the [l]essee may put the existing wells in production." *Id.* at ¶ 5. The lessee was required to put the first well into production within six months of the execution of the lease, and the second well into production within the following six months. Significantly, the lease read, "[i]f this schedule is not adhered to, then the Lessee shall release said lease back to Lessor or begin paying shut-in royalties." *Id.* The primary term of the lease was six months. *Id.* The lessee conceded that the second well was not put into production until 1995. We found that the lessee had "one of two options at its disposal" in 1999: "release the lease or pay shut-in royalties." *Id.* at ¶ 20. Because no shut-in royalties were paid, we concluded that the lease automatically terminated.

**{¶27}** The trial court also cited *Curtis v. American Energy Development, Inc.*, 11th Dist. Lake No. 2000-L-133, 2002-Ohio-3122, in which the Eleventh District found that a lease expired by its own terms as a result of the failure of the lessee to commence drilling a second well within the time specified by the lease. A provision in the lease, captioned "Failure to Commence Drilling," read "in the event the drilling of one of the (two wells) 2 wells is not commenced on the Premises within twelve (12) months after the date of this lease, this lease shall terminate and shall be of no further force or effect. Second well to commence in eighteen months of this lease." *Id.* at ¶ 11. The Eleventh District

concluded that the foregoing provision created a condition precedent to the remaining life of the lease.  *Id.* at ¶ 33.

**{¶28}** The trial court found that the primary term of the 1987 Lease was 60 days based on the handwritten provision.  Despite the fact that the 1987 Lease did not contain the release/termination language present in *Price* and *Curtis, supra*, the trial court further found that the primary term of the 1987 Lease expired on its own terms based on Appellants failure to fulfill the 60-day term for production.  The trial court reasoned that the 60-day term was a condition precedent to the secondary term of the 1987 Lease. (3/9/17 J.E., p. 4).

**{¶29}** In the alternative, the trial court found that the 1987 Lease expired by its own terms due to lack of production in paying quantities from 1987 to 1992.   The trial court cited Ohio case law for the rule that cessation of production for more than two years is evidence of a lack of diligence by the lessee.  (*Id.* at p. 6).  The trial court entered judgment in favor of Appellees and ordered that the judgment entry be recorded and noted upon the 1987 Lease.

**{¶30}** Appellants appealed the January 13, 2017 journal entry (17NO0447), and we held the appeal in abeyance for 60 days in order to allow the trial court to enter a final judgment.  On March 9, 2017, the trial court issued a judgment entry granting summary judgment in favor of Appellees on counts two and three.  On May 5, 2017, we dismissed the appeal because the March 9, 2017 entry did not address the remaining breach of contract and tort claims and did not contain the required language from Civ.R. 54(B).

**{¶31}** On September 19, 2017, Appellees filed a motion pursuant to Civ.R. 41(B)(2) in the trial court to voluntarily dismiss the remaining counts.  Counts four through six were dismissed by order of the trial court on September 26, 2017.  Also on September 26, 2017, the trial court filed a judgment entry that is the final appealable order in this case. The September 26, 2017 Judgment Entry provides, in pertinent part, "The findings and orders of the January 13, 2017 Journal Entry are incorporated by reference as though fully re-stated." The September 26, 2017 Journal Entry further provides that "[t]he March 9, 2017 Judgment Entry is incorporated herein by reference as though fully restated." This timely appeal followed.

## ANALYSIS

**{¶32}** Appellants advance a single assignment of error:

**THE TRIAL COURT ERRED IN GRANTING PLAINTIFFS-APPELLEES' MOTION FOR SUMMARY JUDGMENT.**

**{¶33}** Appellants have not advanced an assignment of error based on the January 13, 2017 journal entry, which effectively granted the motion to strike the Schneider affidavit and their opposition brief. Although they characterize the entry of summary judgment as "a default judgment for discovery sanctions," (Rep., p. 1), they do not assert that the Schneider affidavit or the argument offered in the opposition brief is properly before us for review.

**{¶34}** Appellants' sole assignment of error is divided in three parts: (1) statute of limitations, waiver, estoppel and laches; (2) failure to join indispensable parties; and (3) evidence of economic production. The second part of the sole assignment of error is addressed out of order as the failure to join indispensable parties is a jurisdictional defect and cannot be waived. *Potts v. Unglaciated Industries, Inc.*, 7th Dist. Monroe No. 15 MO 0003, 2016-Ohio-8559, 77 N.E.3d 415, ¶ 42, citing *City of Cincinnati v. Whitman*, 44 Ohio St.2d 58, 60, 337 N.E.2d 773 (1975) (stating an injunction entered in a declaratory judgment action was "void" where the trial court lacked jurisdiction to issue the injunction due to the failure to join a necessary party).

**{¶35}** Appellants contend that the trial court did not have jurisdiction to enter the declaratory judgment because indispensable parties were not joined. Appellants do not specifically identify the alleged indispensable parties but generally refer to the list of working interest owners produced in discovery.

**{¶36}** In a civil lawsuit, the defense of failure to join an indispensable party can be waived if not timely asserted. Civ.R. 19(A), citing Civ.R. 12(G) and (H); Civ.R. 12(H)(2) (the defense can be raised at a trial on the merits). Appellants raised the defense in their answer. However, when declaratory relief is sought under Chapter 2721, the governing statute provides: "all persons who have or claim any interest that would be affected by the declaration shall be made parties to the action or proceeding. * * * a declaration shall

not prejudice the rights of persons who are not made parties to the action or proceeding." R.C. 2721.12(A).

**{¶37}** The Ohio Supreme Court has recognized the absence of a necessary party in a declaratory judgement action is a jurisdictional defect, which precludes a trial court from rendering a proper declaratory judgment and cannot be waived. *Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 99-100; *Gannon v. Perk*, 46 Ohio St.2d 301, 310–311, 348 N.E.2d 342 (1976). Joinder can nonetheless be accomplished by amendment of the pleadings. *Plumbers & Steamfitters Local Union 83 v. Union Local Sch. Dist. Bd. of Edn.*, 86 Ohio St.3d 318, 323, 715 N.E.2d 127 (1999).

**{¶38}** "[W]hether a nonparty is a necessary party to a declaratory-judgment action depends upon whether that nonparty has a legally protectable interest in rights that are the subject matter of the action." *Rumpke Sanitary Landfill, Inc. v. State,* 128 Ohio St.3d 41, 2010-Ohio-6037, 941 N.E.2d 1161, ¶ 14-15. A nonparty's mere practical interest in the subject matter does not rise to the level of a legal interest. *Id.* at ¶ 15.

**{¶39}** Pursuant to R.C. 5301.10, captioned "Parties defendant in suits to cancel leases," reads, in its entirety:

> The plaintiff in an action to cancel a lease or license mentioned in section 5301.09 of the Revised Code ["Leases of natural gas and oil lands to be recorded; address of lessor and lessee; release"], or in any way involving it, in order to finally adjudicate and determine all questions involving such lease or license in such action, need only make those persons defendants, so far as such lease or license is involved, who claim thereunder and are in actual and open possession, and those who then appear of record, or by the files in such office, to own or have an interest in such lease or license. If there is no claimant in actual and open possession, and no persons whose interest appears of record or file, then so far as such lease or license is involved, it will only be necessary to make the original lessee or licensee defendant in order to finally adjudicate and determine all questions concerning such lease or license.

{¶40} Biehl testified that there may be working interest holders to the 1987 Lease. His testimony suggested that Appellants' records would establish their continued interest, however, Appellants provided no additional evidence in response to the subpoena. Further, Appellees' counsel provided an affidavit stating that a search was performed in the Noble County Recorders' Office that showed Appellants were the sole owner/operators under the 1987 Lease. Appellants have not cited any portion of the record, other than Biehl's testimony, to show that Appellees' search was insufficient. Accordingly, the second part of Appellants' sole assignment of error based on the failure to join necessary parties in not well-taken.

{¶41} In the first part of the sole assignment of error, Appellants contend that Appellees' gap in production claims is barred by the fifteen-year statute of limitations set forth in the uncodified law of R.C. 2305.06, as well as the equitable doctrines of waiver, estoppel, and laches. Because Appellants raised the foregoing affirmative defenses in their stricken opposition brief, Appellees contend that Appellants are prohibited from raising their arguments for the first time on appeal.

{¶42} The Ohio Supreme Court recently held that "[t]he 21-year limitations period set forth in R.C. 2305.04 applies to a claim for declaratory judgment that an oil and gas lease has expired by its own terms for lack of production." *Browne v. Artex Oil Co.,* -- OhioSt.3d --, 2019-Ohio-4809, at ¶ 46. R.C. 2305.04, captioned "Recovery of real estate," reads, in pertinent part, "An action to recover the title to or possession of real property shall be brought within twenty-one years after the cause of action accrued * * *."

{¶43} The *Browne* Court reasoned that "an action to recognize the reversion of mineral interests following the alleged termination of an oil and gas lease pursuant to its express terms is not an action upon a written contract; it is more akin to a quiet title action." *Id.* at ¶ 41. The Court further reasoned that "the lease did not impose a contractual obligation upon the lessee to produce oil and gas * * * [a]nd the parties [did] not dispute either the terms of the lease or the meaning of those terms * * * only whether there was a period of non-production that terminated the lease by operation of law." *Id.* at ¶ 42. Because the Brownes sought recognition of their reversionary interest in the minerals, which constituted a part of the realty, the Ohio Supreme Court applied the 21-year statute of limitations in R.C. 2305.04. *Id.*

{¶44} The Brownes acquired ownership of the mineral interest in 2012 and filed their complaint in 2014. The complaint asserted a failure by the lessee to produce any oil and gas from the inception of the lease in 1975 to 1998. The Brownes later asserted for the first time on appeal that the lessee's resumption of production in 1999 did not give rise to a justiciable controversy, but instead, that their cause of action accrued "only when they realized that there was a dispute over the lease's continued validity." *Id.* at ¶ 45. However, the Court refused to consider the Brownes' accrual argument because it was not raised before the trial court. *Id.*

{¶45} Based on the Ohio Supreme Court's decision in *Browne, supra,* the 21-year statute of limitations applies to Appellees' failure to produce in paying quantities claim. The 1987 Lease does not impose a contractual obligation on the lessee to produce oil and gas, and the parties do not dispute either the terms of the lease or their meaning. There is no contractual remedy for a breach of either term. The only determination to be made is whether there was a period of non-production, which terminated the 1987 Lease by its own terms and by operation of law. Assuming that Appellees' claims accrued in 1993, when production of oil and gas commenced pursuant to the terms of the 1987 lease, we find that the 21-year statute of limitations does not bar the claims asserted in the 2013 complaint.

{¶46} Turning to the equitable defenses alleged in Appellants' answer, the elements of laches are: (1) unreasonable delay or lapse of time in asserting a right; (2) absence of an excuse for the delay; (3) actual or constructive knowledge of the injury or wrong; and (4) prejudice to the other party. *Watson v. Caldwell Hotel, LLC*, 7th Dist. Noble No. 16 NO 0432, 2017-Ohio-4007, 91 N.E.3d 179, ¶ 45, citing *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995). The prejudice must be the result of the plaintiff's delay, not merely the result of the plaintiff's assertion or exercise of a right. Furthermore, "[p]rejudice is not inferred from a mere lapse of time." *Id.*

{¶47} Waiver is the voluntary relinquishment of a known right that can be enforced by the person who had a duty to perform and who changed his position as a result of the other party's waiver. *Id.* ¶ 46, citing *Chubb v. Ohio Bur. of Workers' Compensation,* 81 Ohio St.3d 275, 278-279, 690 N.E.2d 1267 (1998). Estoppel, on the other hand, does

not require the party to intend to relinquish a right. *Id., citing Chubb* at 279. The estoppel doctrine prevents relief when a party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment. *Id.* "Although waiver is typical of estoppel, estoppel is a separate and distinct doctrine." *Id.*, citing *Chubb* at 279. Still, the term "waiver by estoppel" has been employed when estopping a party from asserting a right when his conduct was inconsistent with the intent to claim a right and such conduct misled the other party to his prejudice. *J&B Fleet Indus. Supply, Inc. v. Miller*, 7th Dist. Mahoning No. 09MA173, 2011-Ohio-3165, ¶ 79.

**{¶48}** The applicability of equitable defenses in the context of the termination of an oil and gas lease based on its own terms and by operation of law is a matter of first impression in this district. However, we need not consider whether equitable defenses apply here, because there is no evidence of a change in position by or prejudice to Appellants. Consequently, we find that Appellants' arguments predicated upon laches, waiver, and estoppel are not well taken.

**{¶49}** In the third part of Appellants' sole assignment of error, they contend that there is evidence of production in the record. However, Appellants concede that no oil and gas was produced from the wells from 1987 to 1992. Because there is evidence of production from Sam #1 in 1988, we find there was a complete lack of production from either well from 1989 to 1992.

**{¶50}** The trial court correctly concluded that the 60-day provision in the 1987 Lease constituted the primary term of the lease. The Ohio Supreme Court has held that where the conditions of the secondary term of a habendum clause are not met, then the lease terminates by the express terms of the contract and by operation of law and revests the leased estate in the lessor. *Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 77, citing *Tisdale v. Walla*, 11th Dist. Ashtabula No. 94-A-0008, 1994 WL 738744 (Dec. 23, 1994) and *Am. Energy Servs., Inc. v. Lekan*, 75 Ohio App.3d 205, 212, 598 N.E.2d 1315 (5th Dist.1992). We recognized the general rule regarding gaps in production in *RHDK Oil & Gas, L.L.C. v. Dye*, 7th Dist. Harrison No. 14 HA 0019, 2016-Ohio-4654, ¶ 20, appeal not allowed, 147 Ohio St.3d 1506, 2017-Ohio-261, 67 N.E.3d 823:

Courts universally recognize the proposition that a mere temporary cessation in the production of a gas or oil well will not terminate the lease under a habendum clause of an oil and gas lease where the owner of the lease exercises reasonable diligence and good faith in attempting to resume production of the well.

*Id.* 20, quoting *Wagner v. Smith*, 8 Ohio App.3d 90, 92, 456 N.E.2d 523 (4th Dist.1982).

**{¶51}** We quoted *Wagner* for the rule that "'[a] critical factor in determining the reasonableness of the operators conduct is the length of time the well is out of production.'" *Id.*, quoting *Wagner* at 93, citing *Jath Oil Co. v. Durbin Branch*, 490 P.2d 1086 (Okl.1971). In addition to the length of time, a court must consider all attendant circumstances. *Id.*, citing *Barrett v. Dorr*, 140 Ind.App. 295, 212 N.E.2d 29 (1966).

**{¶52}** The party who asserts a claim in an oil and gas case, just as in any other civil case, carries the burden of proof. *Pfalzgraf v. Miley*, 7th Dist. Monroe No. 16 MO 0005, 2018-Ohio-2828, ¶ 45, reconsideration denied, 7th Dist. Monroe No. 16 MO 0005, 2018-Ohio-3595, ¶ 45, citing *Burkhart Family Trust v. Antero Resources Corp.*, 2016-Ohio-4817, 68 N.E.3d 142 (7th Dist.), appeal not allowed, 147 Ohio St.3d 1437, 2016-Ohio-7677, 63 N.E.3d 156, ¶ 13. Therefore, Appellees must prove the failure to produce in this case.

**{¶53}** In *Dennison Bridge, Inc. v. Resource Energy, LLC*, 2015-Ohio-4736, 50 N.E.3d 242 (7th Dist.), we acknowledged there is no bright line rule in regard to cessation periods. However, in *RDHK Oil & Gas*, supra, ¶ 22, this Court acknowledged no Ohio appellate court has recognized forfeiture by operation of law based on less than two years of nonproduction. See *Casto v. Positron Energy Resources, Inc.*, 4th Dist. Washington No. 14 CA 39, 2016-Ohio-285 (seven years of nonproduction during the secondary term resulted in termination of the lease); *Schultheiss v. Heinrich Ents. Inc.*, 4th Dist. Washington No. 15 CA 20, 2016-Ohio-121, 57 N.E.3d 361, (four years of nonproduction during the secondary term resulted in termination of the lease); *Lauer v. Positron Energy Resource*s, 4th Dist. Washington No. 13 CA 39, 2014-Ohio-4850 (two years of nonproduction during the secondary term resulted in termination of the lease); *Moore v. Adams*, 5th Dist. Tuscarawas No.2007AP090066, 2008-Ohio-5953 (six years of

nonproduction during the secondary term resulted in termination of the lease); *Tisdale v. Walla*, 11th Dist. Ashtabula No. 94-A-0008, 1994 WL 738744 (Dec. 23, 1994) (twenty plus years of nonproduction during the secondary term resulted in termination of the lease); *Hanna v. Shorts*, 163 Ohio St. 44, 125 N.E. 338 (1955) (the well failed to produce any oil or gas during the secondary term).

**{¶54}** Here, Appellees demonstrated a lack of production in paying quantities for a period of three years. Appellants concede that there was no production of oil and gas from 1989 to 1992. Therefore, we find that the trial court did not err in granting summary judgment in favor of Appellees on their lack of production in paying quantities claim.

## CONCLUSION

**{¶55}** In summary, we find that the alleged working interest owners identified by Appellants in discovery do not fulfill the statutory requirements of R.C. 5301.10, and, therefore, do not constitute indispensable parties. We further find that the complaint in this matter was timely-filed and that the record establishes a complete lack of production from 1989 to 1992. Accordingly, the entry of summary judgment in favor of Appellees on their lack of production in paying quantities claim is affirmed.

Donofrio, J., concurs.

Waite, P.J., concurs.

Case No. 17 NO 0456

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Noble County, Ohio, is affirmed.  Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**