## CANCELLATION OF OIL LEASES.

[Circuit Court of Wood County.]

GEORGE ZELLER v. G. M. BOOK ET AL.

Decided, April 29, 1905.

*Oil and Gas—Lease to Run as Long as Oil or Gas are Found in Paying
Quantities—Wells Become of Little Value—Action to Terminate
Lease.*

1. Failure to drill additional wells is not ground for terminating a
   lease for oil and gas lands, where it has been satisfactorily shown
   that the territory is light and the production would not warrant
   the sinking of more wells.
2. As to wells already in existence, on land under lease so long as
   oil or gas shall be found in paying quantities, it is for the lessee
   to say whether the production will warrant their further oper-
   ation; and the fact that for reasons which seem to be sufficient,
   he has failed to pump the wells for some time, is not ground for
   the cancellation of the lease, if in his judgment he can still make
   some profit from the operation of the wells.

HAYNES, J. (orally); PARKER, J., concurs; HULL, J., not sit-
ting.

This case comes into this court by appeal and is an action
that was brought in the court of common pleas for the purpose
of declaring a certain oil lease terminated, and to have the same
canceled.  I shall state the case very briefly.  There was an oil
lease made upon this land some time in 1893, and there were three
wells drilled on the property, which have been operated most
of the time from that date forward.

The lease had passed through several hands, the land has
been sold, and finally on November 22, 1901, the plaintiff bought
the property.  On January 27, 1902, he commenced this action.
The terms of the lease run for five years from the date thereof,
or as long as oil or gas shall be found in paying quantities.  The
plaintiff in his petition claims that the wells have ceased to be
paying wells, and claim that they have been left to stand idle
and unoperated for some time, and claims for these reasons

that the lease should be declared ended and canceled, and that the defendants should be required to remove their material from the premises, and the lease canceled of record. The plaintiff at the time he purchased this land took it subject to this lease, and as will be seen, he was in possession but a few days before he commenced to take steps to lay the foundation for this action, and to bring the action.

It appears from the testimony that the wells were not very productive. In common with a great deal of the territory in this section of the country, they have ceased to be large producing wells, if they were run. The whole territory in this immediate vicinity is rather poor for the production of oil—light territory it is termed. Nevertheless these wells have been drilled and money has been expended, and the defendant, Book, has come into the possession of the lease; he owns the wells and equipment and he has endeavored to make some money out of them; endeavored to make his living, perhaps, out of them. The improvements in regard to the operation and management of the wells are such that they can be run at very little expense, and we find in regard to them that they will yield some profit— not a large profit, but some.

The plaintiff comes into a court of equity and asks that this lease be terminated; that the property is very poor paying territory and there is no probability of oil being found there. The plaintiff offers no testimony whatever that there is any probability that it is paying territory; that wells ought to be found upon the territory; in other words, the whole drift of the testimony is that the territory is poor and that the wells, if producing, would be very light, and that a prudent man would not be warranted in drilling a well with the expectation of ever getting his money back, so that, so far as the outcome is concerned, the plaintiff is suffering no injury so far as we can see. So far as the defendant is concerned, he seems to be trying to make his living out of the lease, and we think it would be manifestly unjust to deprive him of this property if he is able to produce oil enough to pay him for the expenses and make him some little profit, or at least furnish him with the means of

a livelihood. We are of the opinion that it is unnecessary to show that he can expect to get back the cost of drilling a well. His profit from what little he could get out of the material used in pumping would simply be salvage and would produce very little in the market, and it seems too a necessity that he should go forward and pump his wells so long as he can do so if it pays him anything like a reasonable return.

It seems to us that a court of equity ought not to interfere with it unless it is necessary to do so. He is operating upon his own judgment of what he deems best and authorities are cited, especially a case in 194 Pa. St., 243, indicating that it is the option of the lessee himself to decide whether he will proceed, or how long he will proceed. It is presumed, of course, that he will operate in his own interest, and so long as he is acting in good faith and making an effort to get some production out of the well, he has a right to go forward and decide for himself. This right of the lessee to exercise his own judgment seems to be authorized in the cases cited to us. We think that view is right and just in the natural outlook of the case, and we hold, therefore, that so far as this man is operating in good faith, it would be unjust to disturb him and compel him to give up what he has in the lease—to take out his casing and material and sell it. It will be time enough to do that after he ceases to operate the lease. We do not think equity would require that this lease should be canceled so long as he is acting in good faith, and we think in this case he is.

It is said that there has been an omission for some time to operate. The testimony of the defendant shows that he has been in a condition physically for some time where he could not carry forward the work. He gives what we deem good and fair reasons for allowing the wells to remain idle that are now on the lease. There was a storm and the derricks were blown down—a very heavy storm; and while in this situation the derricks were burned, and the man seems to have had one trouble upon another, and yet he has been fighting along against these difficulties and doing the best he can under the circumstances, and we think the court ought to permit him to hold the premises

and continue to operate the wells, so long as he in his judgment thinks it profitable, and without further discussion we hold that the petition should be dismissed and judgment awarded the defendant for his costs in the case.

*Jesse Stevens,* for plaintiff.

*James O. Troup,* for defendant.