WAGNER ET AL., APPELLANTS, *v.* SMITH, APPELLEE.

(No. 81-X-30—Decided
November 15, 1982.)

*Mr. Robert L. Hausser,* for appellants.

*Mr. R. William Geyer,* for appellee.

STEPHENSON, J. This is an appeal from a judgment entered by the Washington County Court of Common Pleas finding in favor of Carl E. Smith, defendant below and appellee herein, in an action instituted by Neil H. Wagner and Wilma Sue Wagner, appellants herein, to terminate a gas and oil lease. The following errors are assigned:

"FIRST ASSIGNMENT OF ERROR:

"I. The Court of Common Pleas of Washington County erred in permitting Defendant-Appellee Carl E. Smith, as owner of the working interests in the oil and gas lease upon the 14.653 acres of Plaintiffs-Appellants, to continue to hold the lease despite lack of production, January 1979 through date of trial, July 8, 1981, without fault of Plaintiffs.

"SECOND ASSIGNMENT OF ERROR:

"II. The Court of Common Pleas erred in permitting Defendant Carl E. Smith to continue to hold the lease during the period that the well was inoperable, despite the change in the territory of the leasehold from an agricultural to a municipal incorporated area.

"THIRD ASSIGNMENT OF ERROR:

"III. The Court of Common Pleas abused its discretion in refusing Plaintiffs a new trial (or opportunity to present newly-discovered facts)."

On September 27, 1961, appellants' predecessor in title entered into a lease for oil and gas upon separate tracts totaling thirty-six acres, one tract being 14.653 acres located in the village of Lowell in Washington County. The ownership of this 14.653 acre tract was acquired by appellants on December 29, 1978. Appellee acquired sole ownership of the previous lessor's interest in the lease through four assignments which are as follows:

| Fractional Interest | Assignor | Date of Assignment |
|---|---|---|
| Seven-sixteenths (7/16ths) | Ralph J. Blank | April 29, 1964 |
| Seven-sixteenths (7/16ths) | Ralph J. Blank | December 30, 1978 |
| One-sixteenth (1/16th) | Earl Clymer | January 13, 1979 |
| One-sixteenth (1/16th) | Laurence Pflieger | March 25, 1981 |

The lease provided, *inter alia,* that the term of the lease was to be five years, with the privilege of renewal for five years, "and so much longer thereafter as oil, gas, or their constituents are produced in paying quantities thereon."

Pursuant to said lease, a single well was completed on September 24, 1963. The well is located on the tract presently owned by appellants. In the past the well had continuously produced oil and gas. Gas production ceased in 1978. The record of oil production is the following:

| Year | Total Barrels of Oil Produced | Total Purchase Price | Total Value |
|---|---|---|---|
| 1981 | | | |
| 1980 | unknown | unknown | $ 441.93 |
| 1979 | 68.39 | $14.77 | 386.69 |
| 1978 | 0.00 | 0.00 | 0.00 |
| 1977 (Sept.) | 74.50 | 14.77 | 1,100.37 |
| 1977 (Jan.) | 33.80 | 13.82 | 467.12 |
| 1976 (Oct.) | 80.50 | 13.82 | 1,112.51 |
| 1976 (Jan.) | 63.78 | 12.92 | 824.03 |
| 1976 (Oct.) | 85.91 | 12.22 | 1,049.82 |
| 1975 (May) | 77.11 | 11.85 | 913.75 |
| 1974 | 134.96 | 10.13 | 1,368.14 |
| 1973 | 264.96 | 4.02 | 1,075.14 |
| 1972 | 212.97 | 3.42 | 728.36 |
| 1971 | 173.92 | 3.42 | 594.81 |

It appears undisputed from the evidence that no oil was pumped in 1980 or up to time of trial in July 1981 and that the payment for oil in 1980 was for oil sold in 1979. What is not clearly ascertainable from the record is whether the amount of oil accumulated in 1979, the amount being disputed, was pumped in early 1979 or in 1978. It does, however, appear from the testimony of one Kenneth S. Parsons, an employee of appellee, that no significant amount of oil was pumped at least after the summer of 1979.

The reason the well ceased production was that in 1978 a hole developed in the metal casing of the well which caused the well to be flooded with water. The record reflects appellants have received no royalty payments from the well since their acquisition of ownership.

Appellants' first assignment of error essentially asserts the trial court erred in holding that the lease had not expired, but continued in force. Since the term of the lease, after its initial fixed term or terms, was dependent upon continued production of oil or gas in paying quantities, the issue is not one of forfeiture as upon a condition or covenant, but whether the lease expired by failure to produce gas or oil in paying quantities. *Brown* v. *Fowler*

(1902), 65 Ohio St. 507. As previously noted, no gas or oil was produced in paying quantities at least from the summer of 1979 up to time of trial in July 1981. The Ohio Supreme Court has stated that there can be no production in paying quantities if there is no production at all. *Hanna* v. *Shorts* (1955), 163 Ohio St. 44, 49 [56 O.O. 27].

It is evident in the nature of the operation of gas and oil wells that, for a multitude of reasons, including mechanical failure of equipment, production will be interrupted for relative short periods of time to a permanent cessation of production. The pivotal issue thus presented herein is whether the failure of production can be considered temporary, and if so, what effect it has upon the expiration of the lease.

Courts universally recognize the proposition that a mere temporary cessation in the production of a gas or oil well will not terminate the lease under a habendum clause of an oil and gas lease where the owner of the lease exercises reasonable diligence and good faith in attempting to resume production of the well. See Annotation, Rights of Parties to Oil and Gas Lease or Royalty Deed after Expiration of Fixed Term where Production Temporarily Ceases, 100 A.L.R. 2d

885; 2 Kuntz, Oil and Gas 285, Section 26.8; *Zeller* v. *Book* (1905), 7 Ohio C.C. (N.S.) 429; *Weisant* v. *Follett* (1922), 17 Ohio App. 371. A critical factor in determining the reasonableness of the operator's conduct is the length of time the well is out of production. *Jath Oil Co.* v. *Durbin Branch* (Okla. 1971), 490 P.2d 1086. Additionally, in determining the reasonableness of the lease owner's conduct, all attendant circumstances must be taken into account. *Barrett* v. *Dorr* (1966), 140 Ind. App. 295, 212 N.E. 2d 29.

Applying the above to the foregoing, we must determine whether, under the facts herein, appellee exercised diligence in attempting to restore the well to production. In that the trial court specifically found such to be the case, we must review the record herein to determine whether the trial court's determination is sufficiently supported by the evidence.

It would appear from the record that appellee became aware of the water problem and its effect on production in 1978. Appellee, who owns and operates approximately two hundred wells, testified as follows:

"The big problem was water had broken into [the well] * * * through the five inch and we had about four courses of action, which I couldn't get my partners to go along on how to proceed, it was * * * money to be expended, some more expensive. We could run siphon pipe, we could have run a liner on the inside, we could have tried a squeeze job, we could have tried to mud it off, and finally we have pulled it, plugged it and drilled a new well."

In the summer of 1979, Kenneth Parsons, an employee of appellee, examined the well and was able to pump only a minimal amount of oil because of water in the well. Parsons testified that in the summer of 1980, he was to attempt a "mudding" of the well whereby fine clay is injected into the well casing in an attempt to plug any hole in the casing. However, because of the water pressure in the well, Parsons concluded that any "mudding" attempt would fail and thereby aborted the attempt to repair the well.

No further attempts to repair the well and resume production were made until after the complaint was filed on January 7, 1981, when appellee began preparation for permanently repairing the well by driving a smaller well casing inside the existing well casing. In March 1981, appellee hauled a quantity of used four-inch pipe to the well site. Appellee then began negotiations with several contractors to drive the pipe into the well.[1]

Appellee essentially argues that his delay in more promptly repairing the well arose because of disagreement with other lessees owning fractional interests in the well. Appellee also asserts that as to Mr. Blank's assignment of his seven-sixteenths interest to appellee, while dated December 30, 1978, was not received until June 1979. Appellee testified that even after he owned a majority interest in the well, absent agreement as to the manner of repair, he was reluctant to institute legal proceedings in partition, which he deemed necessary, against the minority owner. Additionally, appellee testified that there was unavailable a contractor to install the four-inch pipe after it was moved to the well site.

In *Jath Oil Co.* v. *Durbin Branch*, *supra* (490 P. 2d 1086), the Supreme Court of Oklahoma held that a majority leaseholder's failure to proceed to place

---

[1] Appellee's brief avers that subsequently the four-inch pipe was installed and production restored. In response, appellants have filed directly in this court a motion for leave to file an affidavit with respect to such brief averment. App. R. 12(A) confines our review to the record as defined in App. R. 9. Accordingly we disregard the brief assertion as to post-trial repairs and do likewise with respect to appellants' motion and affidavit and overrule the motion.

back in production a well inoperative because of a power breakdown for the reason a foreclosure action against a holder of a three-sixteenths interest who had failed to pay his proportionate share of operating expenses was an insufficient reason for failure to effect repairs and resume production when the well had been shut down two years.

A review of the reported cases reflects that while courts tend to hold the cessation of production temporary when the time periods are short, lessees have, for the most part, been held not to have proceeded diligently when the cessation from production exists for two years or more. In *Jath Oil Co.* v. *Durbin Branch, supra,* the court stated:

"The longest period permitted in Oklahoma judicial history for temporary cessation after expiration of the primary term of an oil and gas lease was in *Kerr* v. *Hillenberg, supra* [(Okla. 1962), 373 P.2d 66]. There the time was probably six months but could not have been over 12 months."

In *Gillespie* v. *Wagoner* (1963), 28 Ill. 2d 217, 190 N.E. 2d 765, the Supreme Court of Illinois, in holding the lease terminated, stated the following:

"We believe the proper rule to be that temporary cessation of production after the expiration of the primary term is not a cessation of production within the contemplation and meaning of the 'thereafter' clause if, in the light of all surrounding circumstances, reasonable diligence is being exercised by the lessee to continue production of oil or gas under the lease. See *Lamb* v. *Vansyckle,* 205 Ky. 597, 266 S.W. 2d 253.

"In this case the well was shut down for over two years. The motor was removed from the pump jack without any explanation. The only reasons given for failure to produce were that Allen Brothers [owners of a small working interest and operators of the well] were in financial trouble, that it took time to contact the numerous working-interest

owners and that the weather was bad at times. These circumstances fail to show reasonable diligence in producing the well and the trial court was entirely justified in holding that the lease had terminated. Once it was terminated it could not be revived by commencing production almost simultaneously with plaintiff's action to declare the lease void." *Id.* at 220.

See, also, *Heeter* v. *Hardy* (1948), 118 Ind. App. 256, 76 N.E. 2d 590.

While in *Saulsberry* v. *Siegel* (1952), 221 Ark. 152, 252 S.W. 2d 834, a cessation of production of up to four years was held to be temporary, we agree with the Illinois Supreme Court observation in *Gillespie* v. *Wagoner, supra,* at 219, that the *Saulsberry* court "may have been influenced by the fact that after the well was put back in production the lessor accepted royalties."

Appellee relies upon *Blausey* v. *Stein* (1980), 61 Ohio St. 2d 264 [15 O.O.3d 270]. In *Blausey* the court held in the syllabus that (1) labor of a lessee is not to be valued in determining whether production is in paying quantities, and (2) requiring a lessor to execute a division order is not a modification of the lease. The well was in production at the time of suit and while there had been a cessation of production in past years, whether it caused the lease to terminate was not in issue. Hence, *Blausey* does not aid appellee herein.

In the case *sub judice,* we are not persuaded that justifiable reasons existed for the delay in restoring the well to production. Discovery of the well defect and its effect on production occurred in 1978. It was not until approximately six months later that the existence of the defect was confirmed. Thereafter, another year passed until the abortive "mudding" repair was started in the summer of 1980, but not done because of the nature of the water flow. While the four-inch pipe was contracted for after suit was filed in January 1981, and delivered in March 1981, it was not installed at time of trial.

Accordingly, we hold, in the light of

the totality of circumstances, that appellee did not proceed with the diligence required in respect to the rights of the lessors and that the cessation of production was for an unreasonable length of time and, thus, was more than a "temporary" cessation of production.

We hold the conclusion of the court below otherwise to be against the manifest weight of the evidence and sustain the first assignment of error.

We find no merit in the second assignment of error and it is overruled. There is a question whether such issue was presented below. Assuming, *arguendo*, it was, suffice it to say, that appellants have cited no decisional authority supporting the rule of construction urged by Professor Robert N. Cook in his 1955 Survey of Ohio Law, "Construction of Oil Lease," 7 Wes. Res. L. Rev. 298, and we are unaware of any.

Appellants' third assignment of error argues the lower court erred in overruling appellants' motion for new trial. Appellants' Civ. R. 59 motion for new trial alleged that a new trial should be granted upon the grounds of newly discovered evidence. The appellants allege that newly discovered evidence would impeach and contradict evidence offered by appellee concerning the amount of oil in the storage tank in the summer of 1979. Appellant Wilma Wagner testified at trial that since their ownership of the leasehold in 1978, less than two feet of oil was ever measured in the storage tank. In contrast, appellee offered testimony that as much as seven feet of oil was present in the tank in the summer of 1979. The newly discovered evidence would thus merely serve to impeach appellee's testimony.

The standard applied in determining whether or not to grant a new trial upon newly discovered evidence is stated in the third paragraph of the syllabus in *Sheen* v. *Kubiac* (1936), 131 Ohio St. 52 [5 O.O. 365], as follows:

"To warrant the granting of a motion for a new trial based on the ground of newly discovered evidence, it must be shown that (1) the new evidence must be such as will probably change the result if a new trial is granted, (2) it must have been discovered since the trial, (3) it must be such as could not in the exercise of due diligence have been discovered before the trial, (4) it must be material to the issues, (5) it must not be merely cumulative to former evidence, and (6) it must not merely impeach or contradict the former evidence."

Additionally, we note the granting of a motion for new trial upon the ground of newly discovered evidence is a matter left to the sound discretion of the trial court. *Taylor* v. *Ross* (1948), 150 Ohio St. 448 [38 O.O. 314].

The appellants admit the nature of the newly discovered evidence is to merely impeach evidence presented by appellee. Additionally, given our disposition of the first assignment of error, we question whether such evidence would likely change the result of the matter herein in that such evidence has only limited relevance to the issue of the reasonableness of appellee's efforts to repair the well. Accordingly, appellants' third assignment of error is overruled.

In light of our evidentiary conclusions with respect to the first assignment of error, and finding no other prejudicial error intervening, pursuant to App. R. 12(C), we weigh the evidence and enter final judgment in favor of appellants.

*Judgment accordingly.*

GREY, P.J., and ABELE, J., concur.