[Cite as *Browne v. Artex Oil Co.*, 2021-Ohio-2239.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | | JUDGES: |
| BARRY BROWNE, ET AL | : | Hon. Craig R. Baldwin, P.J. |
| | : | Hon. W. Scott Gwin, J. |
| Plaintiffs-Appellants | : | Hon. Earle E. Wise, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 21CA000002 |
| ARTEX OIL COMPANY, ET AL | : | |
| | : | |
| Defendants-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Civil appeal from the Guernsey County
                                Court of Common Pleas, Case No. 14-OG-
                                513

JUDGMENT:                       Affirmed

DATE OF JUDGMENT ENTRY:         June 30, 2021

APPEARANCES:

For Plaintiffs-Appellants              For Defendants-Appellees

ETHAN VESSELS                          DANIEL CORCORAN
Field, Dehmlow & Vessels, LLC          Theisen Brock, LPA
309 Second Street                      424 Second Street
Marietta, OH 45750                     Marietta, OH 45750

*Gwin, J.,*

{¶1} Appellants Barry L. Browne and Rose R. Browne appeal the January 21, 2021 judgment entry of the Guernsey County Court of Common Pleas granting summary judgment to appellees Artex Oil Company, Artex Energy Group, LLC, Arloma Corporation, and James Huck, LLC.

## *Facts & Procedural History*

{¶2} Appellants own approximately eighty-six acres located in Guernsey County, Ohio, along with the oil and gas interests underlying the property. They purchased the property in 2012. Appellants' predecessor in title, Mary Mercer, entered into an oil and gas lease on December 20, 1975, recorded on January 26, 1976. The lease created a primary lease term of one year, and contained a habendum clause which provided an extension of the one-year term "long thereafter as oil and gas, or either of them, is produced by lessee from said land or from a communized unit as hereinafter provided."

{¶3} Pursuant to the lease, one well was drilled on the property known as the Mercer No. 1 Well, commenced during the one-year primary term and completed on February 17, 1977. The Mercer well was originally drilled by Mammoth Producing Corporation ("Mammoth").

{¶4} Appellees acquired interests in the lease through various assignments, cross-assignments, and stipulations of interest. Artex has operated the well since 1999. Artex's records state that from December 1999 through September 2014, the well produced 1,771.49 barrels of oil, which generated gross revenue of more than $100,000.

Artex presented evidence in 2016 that it paid royalties to appellants in 2013, 2014, and 2015.

{¶5} On December 1, 2014, appellants filed a complaint against appellees for quiet title, declaratory judgment, intentional conversion, and unjust enrichment, all based upon their contention that the lease had terminated by its terms due to lack of production. The complaint alleged that the Mercer well did not produce any oil or gas for a sufficient amount of time to terminate the lease.

{¶6} On December 15, 2014, appellees filed an answer asserting, in part, a statute of limitations defense, and filed a counterclaim for declaratory judgment, claiming the lease was valid and enforceable because the well had been continuously producing since 1977.

{¶7} On July 15, 2015, appellees filed a motion for summary judgment, claiming continuous production of oil from the well. The trial court denied the motion on August 26, 2015.

{¶8} Appellants filed a motion for summary judgment on January 15, 2016, arguing the lease was void because there was no evidence of production from 1981 to 2000 and there were substantial periods of non-production from 1999 to the present. Appellees filed a second motion for summary judgment on January 19, 2016, again claiming continuous production. The trial court denied both motions after holding a hearing.

{¶9} On June 27, 2017, appellees filed a motion for reconsideration based on new case law. On June 29, 2017, appellants also filed a motion for reconsideration based

on new case law.  The trial court granted appellees' motion for reconsideration and motion for summary judgment, finding the lease was valid and enforceable.

{¶10}   Appellants appealed to this Court, arguing the following:  the trial court erred when it held appellants' claims were barred by a 15 year statute of limitations; the trial court erred when it determined that the burden of proof rests with appellants when seeking declaratory judgment to terminate an oil and gas lease for lack of production in paying quantities; the trial court erred when it held that production records and affidavits can be used to evidence production; and the trial court erred when it determined that the plaintiffs' were seeking to prove the well was no longer profitable, when the plaintiffs' case was based on a question of non-production of oil.

{¶11}   In *Browne v. Artex Oil Co.*, 5th Dist. Guernsey No. 17 CA 20, 2018-Ohio-3746, we overruled appellants' assignments of error and affirmed the decision of the trial court.

{¶12}   Appellants appealed to the Ohio Supreme Court, requesting the Supreme Court accept the following propositions of law:  in an action to declare that an oil and gas lease has terminated under its own terms for lack of production in paying quantities, the applicable statute of limitations is 21 years; a cessation of commercial production of oil or gas, generally for two years or more, will cause an oil and gas lease to automatically terminate under the terms of its habendum clause; in order to perpetuate an oil and gas lease under its habendum clause, there must exist objective and verifiable evidence of the commercial sale of oil or gas; evidence of production is not the equivalent to evidence of production in paying quantities necessary to perpetuate an oil and gas lease under its habendum clause; in an action to declare that an oil and gas lease has expired under its

own terms for lack of production in paying quantities, the burden of proof is on the lessee; and, in an action to declare that an oil and gas lease has expired under its own terms for lack of production in paying quantities, when deciding a motion for summary judgment filed by the lessee, a trial court must construe all of the evidence in a light most favorable to the lessor.

{¶13} The Ohio Supreme Court accepted only appellants' first proposition of law and rejected the balance of appellants' propositions of law. Thus, the single question before the Court was which statute of limitations applied to appellants' claim that the lease terminated by its terms and by operation of law. The Court held that appellants' claims are governed by the 21-year statute of limitations, reversed our decision, and remanded the matter to the trial court to evaluate the parties' claims in light of the correct statute of limitations.

{¶14} Upon remand to the trial court, the trial court permitted the parties to conduct further discovery. Appellees filed a motion for summary judgment on January 10, 2020. Appellants filed their own motion for summary judgment on October 15, 2020. The parties filed numerous responses and replies, including supplemental memoranda in support of their motions.

{¶15} The trial court issued a judgment entry on January 21, 2021, granting appellees' motion for summary judgment and denying appellants' motion for summary judgment. The trial court dismissed appellants' complaint with prejudice, finding they were not entitled to compensation for conversion, trespass, or unjust enrichment. Further, the trial court declared the oil and gas lease to be a valid and subsisting oil and gas lease

fully enforceable in accordance with its original terms with respect to the entire property described in the lease from the surface to the center of the earth.

{¶16} Based upon the procedural posture of the case upon its remand from the Ohio Supreme Court, the trial court considered evidence of production and non-production between 1993 and 1999. The trial court reviewed the evidence submitted and cited the following in support of its decision: the deposition testimony of Carl Brazell, Jr. that there never was a time of more than two years when the well was not pumped or produced and when Mammoth owned the well about a tank of oil was sold each year; Tom Tugend's affidavit that, based on his review of the Ohio Department of Natural Resources ("ODNR") records, the well was producing from at least 1991 until 1997; Jerry James' opinion that the Mercer well produced oil between 1981 and 1999; Eugene Huck's testimony that there was no indication from the condition and appearance of the well equipment that the well had not been producing; Michael Kavage's deposition testimony that he never received a complaint that the well was not in production; and James Patterson's affidavit. The trial court concluded appellees "presented significant evidence that the Mercer No. 1. Well has been producing from at least 1993-1999 pursuant to the affidavits, depositions, and production records," and that "Plaintiffs have not presented any evidence to satisfy their burden."

{¶17} Appellants appeal the January 21, 2021 judgment entry of the Guernsey County Court of Common Pleas and assign the following as error:

{¶18} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR THE DEFENDANTS.

{¶19} "II. THE TRIAL COURT ERRED IN FAILING TO GRANT PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT."

*Summary Judgment Standard*

{¶20} Civil Rule 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶21} A trial court should not enter summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer*

*Co. v. Browning-Ferris Inds. Of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶22} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

*Oil & Gas Lease*

{¶23} "The rights and remedies of the parties to an oil and gas lease must be determined by the terms of the written instrument" and "such leases are contracts, and the terms of the contract with the law applicable to such terms must govern the rights and remedies of the parties." *Harris v. Ohio Oil Co.*, 57 Ohio St. 118, 48 N.E. 502 (1897).

{¶24} After the primary term of an oil and gas lease expires, if the conditions of the secondary term are not being met, the lease terminates by the express terms of the contract and by operation of law, and re-vests the leased estate in the lessor. *Swallie v. Rousenberg*, 190 Ohio App.3d 473, 2010-Ohio-4573, 942 N.E.2d 1109 (7th Dist.).

{¶25} In this case, the habendum clause provided an extension of the one-year lease in the event oil or gas, or either of them, is produced by lessee from the land. This Court has determined "the term 'produced' in a habendum clause means 'produced in paying quantities,'" such that domestic use of oil or gas is insufficient. *Morrison v. Petro Evaluation Services, Inc.*, 5th Dist. Morrow No. 2004 CA 0004, 2005-Ohio-5640; see also *Barclay Petroleum, Inc. v. Bailey*, 4th Dist. Hocking No. 16CA14, 2017-Ohio-7547. The

term "paying quantities" generally means quantities of oil and gas sufficient to yield even a small profit to the lessee over operating expenses, even though the undertaking as a whole may result in a loss. *Blausey v. Stein*, 61 Ohio St.2d 264, 400 N.E.2d 408 (1980). The construction of the phrase "paying quantities" must be from the standpoint of the lessee and his or her good faith judgment that production is in paying quantities must prevail. *Cotton v. Upham Gas Co.*, 5th Dist. Knox No. 86-CA-20, 1987 WL 8741.

{¶26} The mere temporary cessation in the production of a gas or oil well will not terminate the lease under a habendum clause where the owner of the lease exercises reasonable diligence and good faith in attempting to resume production of the well. *Wagner v. Smith*, 8 Ohio App.3d 90, 456 N.E.2d 523 (4th Dist. Washington 1982). Courts have consistently recognized that the cessation of production is temporary when the cessation is for a short period of time. *Id.* There is no case in Ohio in which an Ohio appellate court deemed a lease forfeited based on less than two years of nonproduction. *Id.; RHDK Oil and Gas, LLC v. Dye*, 7th Dist. Harrison No. 14 HA 0019, 2016-Ohio-4654; *Moore v. Adams*, 5th Dist. Tuscarawas No. 2007AP090066, 2008-Ohio-5953.

I. & II.

{¶27} Appellants argue the trial court committed error by granting summary judgment to appellees and in denying appellants' summary judgment motion. Appellants contend the lease expired under its terms and by operation of law because the well failed to produce oil for commercial sale for over a period of two consecutive years from 1993 through 1999.

{¶28} In our initial decision in 2018, we affirmed the trial court's dismissal of appellants' complaint because there was no evidence that the lease had expired during

the 15-year period prior to the filing of appellants' complaint in 2014. The Supreme Court held that a 21-year statute of limitations applies to a claim for declaratory judgment that an oil and gas lease has terminated by its terms and operation of law due to lack of production. *Browne v. Artex Oil Co.*, 158 Ohio St.3d 398, 2019-Ohio-4809, 144 N.E.3d 378. In this appeal, we consider only whether there are genuine issues of material fact as to whether there was evidence of production in paying quantities between 1993 and 1999.

{¶29} The law of the case doctrine "provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both trial and reviewing levels." *Nolan v. Nolan*, 11 Ohio St.3d 1, 462 N.E.2d 410 (1984). "This is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Id.*

{¶30} In their brief, appellants ask this Court to reconsider or "correct" the law contained in our previous opinion. We decline to do so. Appellants appealed our decision to the Ohio Supreme Court, asserting six propositions of law. The Supreme Court accepted only the proposition of law dealing with the statute of limitations. Accordingly, we find that, pursuant to the law of the case as stated in our first opinion, the burden of proof rests with appellants. See also *Pfalzgraf v. Miley*, 7th Dist. Monroe No. 16 MO 0005, 2018-Ohio-2828. Additionally, we find it is law of the case that production records and affidavits can be used to prove oil and gas production.

{¶31} It is not appellees' burden to prove that the well was profitable between 1993 and 1999. Rather, it is appellants' burden to show the well was not producing in

paying quantities for a two-year or greater period between 1993 and 1999. *Browne v. Artex Oil Co.*, 5th Dist. Guernsey No. 17 CA 20, 2018-Ohio-3746; *Burkhart Family Trust v. Antero Resources Corp.*, 7th Dist. Monroe Nos. 14 MO 0019, 14 MO 0020, 2016-Ohio-4817.

{¶32} We find appellees produced evidence in support of their motion for summary judgment sufficient to establish the absence of any genuine issue of material fact with regards to production in paying quantities from 1993 to 1999.

{¶33} Carl Brazell, Jr. ("Brazell") testified that he personally pumped the Mammoth wells, including the Mercer well, from 1978 to the Summer of 1997, and again from the Fall of 1997 to 1999. Brazell generally pumped the Mercer well a couple times every week, with the occasional brief break due to bad weather or minor issues like the pitman arm not staying in the crank arm. Brazell explained that when he pumped the Mercer well, it pumped fluid into the tank. Every time he pumped it, he had to start the pump. Brazell would start the pump, let it pump for six hours, and then the pump would automatically shut off. While the well initially pumped a good amount, it gradually tapered off to about one barrel a day.

{¶34} When Mammoth Producing owned the Mercer well, Brazell sent Sam Garfield and/or Mammoth monthly invoices, but he did not retain these invoices. After both Sam and his wife Elnora Garfield died, Brazell continued to pump the Mercer well. He pumped the Mercer well from 1978 to 1997. When Mammoth owned the Mercer well, Brazell made the decision when to sell the oil produced from the well, and sold at least one tank per year. Brazell testified that no one from ODNR ever told him to stop pumping the Mercer well.

{¶35} From approximately April to June of 1997, the Mercer well did not pump because there was a leak. Brazell fixed the leak and "cleaned up" the well. The well had been pumping before the leak. Brazell could not remember if he pumped the well after fixing the leak in June of 1997, because he vaguely remembered the people from Mammoth telling him to "let it go."

{¶36} After Johnson Oil and Gas ("Johnson") purchased the Mercer well in September of 1997, Brazell again pumped the Mercer well. Brazell made a deal with Mike Johnson and he pumped it for him. Brazell sent Johnson monthly invoices, and Johnson paid him. Brazell starting pumping the well in the Fall of 1997 for Johnson, and continued to do so until Johnson sold the well in 1999. During this time, Brazell sold a tank off of the Mercer well for Johnson. Brazell identified Deposition Exhibit 2 as his copy of an invoice he sent to Johnson in August of 1998 for pumping the Mercer well. In this invoice, Brazell was billing Johnson for when he pumped the well and shipped the oil out in July of 1998. Brazell thinks that the oil from July 1998 was sold to Main Star. Brazell identified Deposition Exhibit 3 as his copies of invoices sent to Johnson for pumping the Mercer well covering the date range of October 23, 1997 to September 10, 1998. Johnson paid Brazell for the amount on the invoices.

{¶37} Brazell testified that there was never a period of two or more years that the Mercer well was not pumped or produced. The maximum amount of time that it was not pumped or produced was approximately five or six months in 1997.

{¶38} Appellants argue Brazell's testimony suffers from "seriously credibility issues" and thus the trial court and this Court cannot rely on his testimony to find appellants met their burden of proof. We disagree. "Credibility issues typically arise in

summary judgment proceedings when one litigant's statement conflicts with another litigant's statement over a fact to be proved." *Turner v. Turner*, 67 Ohio St.3d 337, 617 N.E.2d 1123 (1993). However, in this case, appellants have not presented any instance where Brazell's testimony conflicts with another litigant's statement such that appellants cannot use his testimony to meet their summary judgment burden.

{¶39} Tom Tugend ("Tugend"), a former permitting administrator for the ODNR from 1986 to 1997, averred that he was involved in initiating and drafting the 1994 "Chief's Order," at issue in this case, and was familiar with how the records related to these types of orders were kept by ODNR. Tugend confirmed that, based upon the ODNR documents, the Mercer well was producing before, during, and after the time the 1994 "Chief's Order" was issued. Tugend included the following records as evidence of his determination: 1991 ODNR inspection stating the well was producing; 1994 interoffice communication from Tugend to Dick Shockley, stating Brazell was producing the wells yet did not provide proof of liability insurance; and a 1996 letter from Mammoth from ODNR saying "since these wells are all producing."

{¶40} Eugene Huck ("Huck"), vice president of operations at Artex, testified he believed the Mercer well was producing in 1998, because, in doing their due diligence to purchase the well, Johnson told Artex it was producing. Huck also believes the Mercer well was producing due to the condition and appearance of the well equipment.

{¶41} Huck testified that there was no indication from the condition and appearance of the well equipment that the well had not been producing because it was not overgrown, it was in working order, and started immediately producing when Artex started the pump. The amount of oil that Artex sold from the Mercer well in 1999 leads

Huck to believe that it was not all produced in 1999, because that amount would have been produced over a longer period of time.

{¶42}  Jerry James ("James"), President of Artex and a professional engineer, testified that while he does not have any documentary evidence that Johnson produced oil from the Mercer well from 1997 to 1999, he received verbal assertions from Mike Johnson (who is now deceased) that the Mercer well produced during these years.

{¶43}  James opined in his affidavit, to a reasonable degree of scientific, professional, and engineering certainty, that the Mercer well has continuously pumped and produced since 1977.  He based his opinion on the following:  oil and gas wells are taxed based on production from the well.  Thus, in order to have a real estate tax bill on an oil and gas well, the well had to sell oil or gas.  Since the Guernsey County Treasurer's tax duplicate shows that real estate taxes were assessed and paid for tax years 1977 to 1997, James concluded the well had been in production during these years.  James further based his opinion on the theory of well production decline and the rate of production in 1999.  Lastly, James analyzed the oil production sold by Johnson from July 1, 1997 to October 1, 1999, stating it would have been impossible for the well to produce 269 barrels of oil from January 1, 1999 to October 1, 1999, so the well had to have been continuously pumping during Johnson's ownership.

{¶44}  Michael Kavage ("Kavage") was on oil and gas well inspector for ODNR from 1980 to 2010.  He inspected the Mercer well at least twice.   Kavage remembered that Brazell pumped the Mercer well and Brazell told him that if he found anything wrong with the well, to get ahold of him immediately and he would take care of it.  Kavage confirmed the portion of his affidavit stating that, during his time as a field inspector from

1982 to 2010, he never received a complaint that the Mercer well was not in production. If a well was capable of producing but was not, he would have issued a citation for an idle well.  Kavage did not know if there was any product sold from the well during his time inspecting it.

{¶45}  James Patterson ("Patterson), the nephew of Mary Mercer, averred in an affidavit that "oil was produced from the Mercer #1 well on the subject premises on a continuing basis during the ownership of Mary Louise Mercer and of affiant and, further, the that oil was sold and royalties paid during such periods."  Appellants contend the trial court committed error in relying on Patterson's affidavit, because he later changed his testimony during his deposition. During his deposition, Patterson testified he did not remember signing the affidavit, and that while he assumed the Mercer well produced oil and it was pumped on an interval basis, he did not know for sure.  The trial court acknowledged this discrepancy in its opinion.  Upon review, we find even if the trial court committed error in considering Patterson's testimony, the balance of the evidence presented by appellees was sufficient to meet their summary judgment burden.

{¶46}  Barry Browne testified he had no personal knowledge of the Mercer well prior to 2012.  Browne said the only evidence he has to show the well did not produce is "only what [he] has seen in the records presented."

{¶47} We find that appellees produced evidence sufficient to establish the absence of any genuine issue of material fact with regards to production in paying quantities.  Thus, the burden shifted to appellants to submit contrary evidence illustrating a genuine issue of material fact.

**{¶48}** Appellants contend the ODNR Completions Report (well summary) demonstrates a genuine issue of material fact because it shows a gap in reported production from 1981 through 1999.

**{¶49}** Appellants submitted the ODNR production reports and records in *Browne v. Artex Oil Co.*, 5th Dist. Guernsey No. 17 CA 20, 2018-Ohio-3746. We found these reports and records to be insufficient to demonstrate a genuine issue of material fact when analyzing the 1999-present time period. We similarly find them insufficient to demonstrate a genuine issue of material fact from 1993 to 1999.

**{¶50}** The failure to file statutorily-required production reports with ODNR does not demonstrate a well is not producing under the terms of a lease and does not mean oil was not produced. *Potts v. Unglaciated Indus., Inc.*, 7th Dist. Monroe No. 15 MO 0003, 2016-Ohio-8559. In this case, unlike the cases cited by appellants, the ODNR reports do not show "zero" production. See *Holland v. Gas Enterprises, Co.*, 4th Dist. Washington No. 15CA42, 2016-Ohio-4792 (finding summary judgment for appellants appropriate when Gas Enterprises' own records, including forms it filed with ODNR, affirmatively reported that no oil or gas was produced). Mammoth never affirmatively reported to ODNR that the well did not produce any oil or gas during this time period. Rather, Mammoth failed to submit production reports to ODNR. The fact that Mammoth did not submit production reports to the ODNR does not help determine whether the Mercer well produced in paying quantities. We similarly find Mammoth's failure to report production to the county auditor insufficient to demonstrate a genuine issue of material fact. *Burkhart Family Trust v. Antero Resources Corp.*, 7th Dist. Monroe Nos. 14 MO 0019, 14 MO 0020, 2016-Ohio-4817.

{¶51} Appellants contend the "Chief's Order" from ODNR affirmatively demonstrates the well was not producing, because to do so, Mammoth would have been in violation of the ODNR order. We disagree. The "Chief's Order" that ordered Mammoth to suspend oil operations was the result of Mammoth's failure to provide ODNR with a copy of their insurance policy and their production reports for 1993. However, there is no language in either R.C. 1509.07 (liability insurance coverage) or R.C. 1509.11 (statement of production of oil) stating that, by failing to satisfy either section, the lessee loses its rights under the lease. The lack of compliance with these sections has no effect upon the continuing validity of the lease. *McWreath v. Maiorca*, 11th Dist. Trumbull No. 2014-T-0075, 2015-Ohio-4319 (holding there is no language in the R.C. 1509 statute indicating that, by failing to satisfy the statute, the lessee loses its rights under the lease); *Talbott v. Condevco, Inc.*, 7th Dist. Monroe No. 19 MO 0007, 2020-Ohio-3130. Further, examining the plain language of the lease, nothing in the lease states it should be terminated or forfeited if the owner was in violation of an ODNR order, or in violation of R.C. 1509.07 and R.C. 1509.11. Despite the order by ODNR, appellants did not submit any evidence that production actually ceased during this period of time.

{¶52} Further, the records from ODNR enforcement show that ODNR believed the Mercer well was producing. The letter to Mammoth in 1996 from ODNR states further action would be taken against Mammoth for the failure to post adequate bond and insurance "since these wells are all producing." The Mercer Well is one of the wells contained on the list attached to the letter.

{¶53} Appellants argue the Artex "production graph" recording no oil production from 1981 to 1996 by Artex's predecessor-in-interest affirmatively demonstrates there

was no production during these years. As with the ODNR records and reports, appellants submitted this graph in *Browne v. Artex Oil Co.*, 5th Dist. Guernsey No. 17 CA 20, 2018-Ohio-3746. We found this graph to be insufficient to demonstrate a genuine issue of material fact when analyzing the 1999-present time period. We similarly find the graph insufficient to demonstrate a genuine issue of material fact from 1993 to 1999. The graph is simply a depiction of the data from the ODNR records. As detailed above, the fact that Mammoth did not submit production reports to ODNR does not demonstrate the Mercer well failed to produce in paying quantities.

{¶54} Appellants assert the probate documents of Samuel Garfield, owner of Mammoth, establish a genuine issue of material fact. We disagree. Samuel Garfield's estate tax return lists the value of his 100% ownership stake in Mammoth on the date of his death to be "nil." Garfield died in 1981. The estate tax return was filed in 1984. However, the relevant time period at issue is 1993-1996. Further, there is no evidence in the probate records to demonstrate the Mercer well was not producing in paying quantities, such as a detailed list of income and expenses that would be contained in the accounting records of Mammoth. The stock value alone does not demonstrate whether the Mercer well was producing, as the stock deals with the value of the company as a whole, and is not specific to any of the many individual wells Mammoth owned. See *Burkhart Family Trust v. Antero Res. Corp.*, 7th Dist. Monroe No. 14 MO 0019, 14 MO 0020, 2016-Ohio-4817.

{¶55} Appellants also argue the probate documents from the estate of Elnora Garfield, Sam's wife, establish a genuine issue of material fact as to production in 1993 and 1994. Elnora died on September 19, 1985. After she died, Mammoth was managed

by the Bank of America trust department; specifically, accountant Kurt Filipovicth and attorney Ian Hunter.

{¶56} Appellants contend the documents affirmatively show there was no production of the Mercer well in 1993 or 1994 because there was no royalty income listed on the estate documents for 1993 or 1994.  We disagree.

{¶57} Elnora never owned Mammoth or the Mercer well, as the probate records of Mr. Garfield show that he left the company to his grandchildren. The Mercer well was not one of the wells Elnora owned individually.  The letter accompanying the records from Bank of America states that "following Elnora's death, the income from certain oil and gas interests that belonged to Sam's estate apparently was erroneously received by Petitioner and entered as receipts in the accounting of Elnora's estate."  In these records, there was no royalty income listed for 1993 or 1994.  However, there is no further explanation or documentation as to whether there was royalty income from 1993 or 1994 provided to Mr. Garfield's grandchildren, the individuals who actually owned Mammoth and the Mercer well during those years, or whether this income that was "erroneously entered" into Elnora's estate was all the income from Mammoth in these years.  Further, there is no specific mention of the Mercer well or its lease in the estate accounting records, even though the accounting records do list other specific leases and wells.  Even for the wells specifically mentioned in the documents, there is a list of expenses, not a calculation of the net profit or loss from a particular well. The cases cited by appellants in support of their argument contained affirmative affidavits stating that no royalties had been received in certain years.  There is no such evidence in this case.

{¶58} Appellants argue the Guernsey County Auditor's records and accompanying documentation show a lack of production for the two-year period of 1997-1999. We disagree. In 1997, Mammoth filed a form 6A with the Guernsey County Auditor with regards to the Mercer well listing the "number of producing wells at end of year" as one, but listing no average daily or total production. The letter accompanying the 6A written by Mammoth's accountant states the amount was zero based upon "lack of production." The letter also states that Mammoth sold all interest in the Mercer well on May 1, 1997. The information on the form itself is inconsistent and ambiguous, as it lists the well as "producing," but lists no average daily or total production. Further, as detailed above, the relevant time span at issue is two years of non-production. Construing the evidence in a light most favorable to appellants, the period of non-production is only four months, as Mammoth sold the well on May 1, 1997.

{¶59} Appellants contend the September 18, 2020 affidavit of Lori Johnson demonstrates that Johnson Oil did not commercially produce the well for the remainder of 1997 and 1998. We disagree. On October 2, 2020, Lori Johnson signed a second, supplemental affidavit. This affidavit provided as follows: she was not involved in the day-to-day operations of the well; her husband Mike (who is now deceased) was familiar with the operations of the well and she had no personal knowledge as to whether the Mercer well was pumped during the time it was owned by Johnson from 1997 to 1999; she had no personal knowledge of when the oil that shipped and sold in 1999 was produced; and she did not have any personal knowledge of whether the well was producing when Johnson acquired it in 1997. Lori Johnson clarified her statement from the first affidavit (that it was her belief that the Mercer well did not commercially produce

any oil in 1997 or 1998) and stated, "what I meant is that I do not currently have any records showing that oil from the Mercer No. 1 Well was shipped or sold by Johnson Oil and Gas prior to 1999." Based upon Lori Johnson's admitted lack of personal knowledge as to whether the well pumped or produced from 1997 to 1999, we find her first affidavit is insufficient to create a genuine issue of material fact, as Civ.R. 56(E) states "supporting and opposing affidavits shall be made on personal knowledge."

{¶60} Appellants finally argue that "run tickets" or evidence of the "legal tender of oil" is required to prove continued production. As we stated in *Browne v. Artex Oil Co.*, 5th Dist. Guernsey No. 17 CA 20, 2018-Ohio-3746, appellees' production records and affidavits can be used to show continuous production of the well, not just the "run tickets." See also *RHDK Oil & Gas LLC v. Dye*, 7th Dist. Harrison No 14 HA 0019, 2016-Ohio-4654.

{¶61} We find appellants did not meet their reciprocal summary judgment burden to provide evidence establishing a genuine issue of material fact. See *RHDK Oil and Gas, LLC v. Dye*, 7th Dist. Harrison No. 14 HA 0019, 2016-Ohio-4654 (finding summary judgment for RHDK Oil appropriate when RHDK provided two affidavits from employees stating their reasonable and good faith belief that the well was profitable and lack of affirmative evidence of lack of production from the appellants); *Burkhart Family Trust v. Antero Resources Corp.*, 7th Dist. Monroe Nos. 14 MO 0019, 14 MO 0020, 2016-Ohio-4817 (reversing trial court's finding judgment against Antero Resources when trial court's findings were based on failure to report production to ODNR or the county auditor and the loss for "operations" on tax returns).

{¶62} Accordingly, appellants' assignments of error are overruled.

{¶63}   The January 21, 2021 judgment entry of the Guernsey County Court of

Common Pleas Court is affirmed.

By Gwin, J.,

Baldwin, P.J., and

Wise, Earle, J., concur